UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

DARRELL SIMS,

                    **Plaintiff,**          08 Civ. 5965 (JGK)

       **- against -**            <u>MEMORANDUM OPINION AND</u>
                                            <u>ORDER</u>

THE CITY OF NEW YORK,

                    **Defendant.**
_____

JOHN G. KOELTL, District Judge:

      The plaintiff, Darrell Sims, brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. § 1981; and the Administrative Code of the City of New York § 8-101 et seq. (the "NYCHRL"), against the defendant, the City of New York.  The plaintiff alleges (1) discrimination claims on the basis of race and gender arising out of the plaintiff's alleged non-promotion and reassignment; and (2) a hostile work environment claims based on race.[1]

      The defendant moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the Complaint in its entirety.

      At the outset, the Court notes that the plaintiff did not specify which theories of recovery--hostile work environment and discrimination--were being asserted under which statutes--Title

---

[1] The plaintiff had originally asserted unlawful retaliation claims under Title VII and the NYCHRL and a claim of age discrimination.  The plaintiff withdrew those claims at oral argument on the defendant's motion for summary judgment.

VII, § 1981, and the NYCHRL.  Accordingly, each claim is analyzed under each statute.


                              I.

     The standard for granting summary judgment is well established.  This Court may not grant summary judgment unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); see also Matican v. City of New York, 524 F.3d 151, 154 (2d Cir. 2008); Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them."  Gallo v. Prudential Residential Servs. Ltd., 22 F.3d 1219, 1224 (2d Cir. 1994).  The substantive law governing the case will identify only those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Carvel v. Franchise Stores Realty Corp., No. 08 Civ. 8938, 2009 WL 4333652, at *12 (S.D.N.Y. Dec. 1, 2009).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (internal citation omitted); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Carvel, 2009 WL 4333652, at *12.

II.

The following facts are taken from the evidence submitted
to the Court and are construed in the light most favorable to
the plaintiff.  All facts are undisputed unless otherwise noted.

The plaintiff is an African-American male born in 1955.
(Def. 56.1 Stmt. ¶ 1.)  He has master's degrees in both
architecture and real estate development and is a registered
architect in New York and Ohio.  (Def. Ex. C.)

The plaintiff began his employment with the New York City
Department of Housing Preservation and Development ("HPD" or
"Agency") on August 12, 1980, as an engineering technician.
(Def. 56.1 Stmt. ¶ 2.)  The plaintiff was promoted to
Superintendent of Construction in 1986 after taking the Civil
Service Promotional Exam.  (Def. 56.1 Stmt. ¶ 4.)  In 1992, the
plaintiff applied for a position as Director of the Article 8A
Loan Program Technical Services Unit ("Unit"), and in January of
1993 he was appointed Director of the Unit.  (Def. 56.1 Stmt. ¶¶
6-7; Pl. Ex. 2A).  The Article 8A Loan Program helps eliminate
urban blight by providing low interest loans to perform needed
work related to the cure of housing code violations.  (Def. 56.1
Stmt. ¶¶ 8-9.)

The plaintiff received at least twelve letters of
commendation between 1991 and 2004 for his work with the Article
8A Loan Program.  (Pl. Ex. 2A footnote 7.)

4

In or about March 1997, the Assistant Commissioner of the
Division of Architecture, Construction and Engineering ("DACE"),
Anthony D'Urso, created a new position: Director of Technical
Services for Development Programs.  (Def. 56.1 Stmt. ¶ 14.)  The
plaintiff applied for this position, but Joseph Canton, a white
male, was appointed instead.  (Def. 56.1 Stmt. ¶¶ 15-16.)

In or about 2000, Mr. D'Urso retired as Assistant
Commissioner.  (Def. 56.1 Stmt. ¶ 20.)  The plaintiff applied
for this position, but Timothy Joseph was appointed instead.
(Def. 56.1 Stmt. ¶ 21; Pl. 56.1 Stmt. ¶ 20.)  The defendant
claims that Mr. Joseph is African-American.  (Def. 56.1 Stmt. ¶
22; Joseph Decl. Jan. 29, 2010 ¶ 2.)  The plaintiff claims that
Mr. Joseph is Caribbean-American.  (Pl. 56.1 Stmt. ¶ 22.)

In or about 2002, Mr. Canton retired as Director, and
William Rosado temporarily took over the responsibilities until
a new Director could be appointed.  (Def. 56.1 Stmt. ¶¶ 23-24.)
The defendant claims that Mr. Rosado is Hispanic-American.
(Def. 56.1 Stmt. ¶ 25.)  The plaintiff denies this, but admits
no personal knowledge of what ethnicity Mr. Rosado is.  (Pl.
56.1 Stmt. ¶ 25.)

On October 29, 2002, a job vacancy notice was posted for
Director of Technical Services for Development Programs.  (Def.
56.1 Stmt. ¶ 27.)  The plaintiff applied for the position and
was interviewed by Mr. Rosado.  (Def. 56.1 Stmt. ¶ 28-29.)  The

vacancy was not filled due to a freeze on hiring and promotions, but Michael Popper was assigned as Acting Director until the position was re-opened to be permanently filled. (Def. 56.1 Stmt. ¶¶ 32-33.) Mr. Popper did not receive a pay increase for this new position. (Joseph Decl. Jan. 29, 2010 ¶ 13.) Mr. Popper is a white male. (Def. 56.1 Stmt. ¶ 34.)

The plaintiff was offered a position as Director of Construction Management Programs. (Def. 56.1 Stmt. ¶ 35.) The plaintiff turned down the offered position on September 29, 2003. (Pl. Ex. 15.) The plaintiff states he turned down the offered position because it carried increased responsibility with no corresponding increase in compensation. (Pl. Ex. 15; Sims Dep. 45:7-25.)

The plaintiff believes that his race was considered in denying him the promotion to Acting Director. (Def. 56.1 Stmt. ¶ 37.) The plaintiff also testified that he thought he was denied the position of Acting Director in retaliation for turning down the offered position of Director of Construction Management Programs. (Def. Stmt. ¶ 36; Sims Dep. 48:15-24.)

The defendant claims that the plaintiff was "disrespectful and belligerent" to Mr. Popper when Mr. Popper sought the plaintiff's input about the plaintiff's unit. (Def. 56.1 Stmt. ¶ 42.) The plaintiff does not recall the details of the meeting

6

(Pl. 56.1 Stmt. ¶ 39), but did apologize for the "disagreement" over the director position. (Def. 56.1 Stmt. ¶ 43).

Mr. Popper retired in 2005, and pending the selection of a replacement, the plaintiff reported to Mr. Rosado, Director of Operations. (Def. 56.1 Stmt. ¶¶ 46-47.) The defendant alleges that during the time the plaintiff reported to Mr. Rosado, the plaintiff was "unable to properly delegate work to his subordinates, which resulted in unnecessary delays in the Unit." (Def. 56.1 Stmt. ¶ 48.) The plaintiff denies that allegation and responds by claiming that Mr. Rosado "asked him to require his subordinates to perform illegal directives [by] requiring subordinates to perform out of title work." (Pl. 56.1 Stmt. ¶ 48; see also Pl. Exs. 5, 6.) The defendant denies that the plaintiff ever raised the issue of out of title work. (Rosado Decl. March 19, 2010 ¶ 5; Joseph Decl. March 19, 2010 ¶ 8.)

On February 19, 2008, an arbitrator, Amedeo Greco, found that HPD had been assigning its employees out of title work from October 3, 2005 to February 19, 2008. (Pl. Ex. 6.) The City had assigned the employees Level 3 duties, which were "substantially different" from their Level 2 job titles. (Pl. Ex. 6 at 14.) The City was ordered to make the employees whole by paying them the difference between Level 2 and Level 3 compensation. (Pl. Ex. 6 at 14.)

It should be noted, however, that the plaintiff was not a grievant in that case. (Pl. Ex. 6.) Additionally, other than Joseph Longo, none of the individuals the plaintiff specifically complains about in the current case were mentioned in the arbitrator's decision. (Pl. Ex. 6.) While Mr. Longo was not specifically found to have been assigned out of title work in the decision, his testimony was used to support the finding that Level 3 work was being done by employees designated at Level 2. (Pl. Ex. 6 at 8-9, 13.)

Based on the Organizational Charts that the plaintiff submitted, some of the grievants in the arbitrator's decision-- Vincent Trotiano, Alton Dunkley, Thomas Daley, Eric Wellington, and Richard Cognat--appear to have been under either direct or indirect supervision from Joseph Longo, William Rosado, Timothy Joseph, Michael Popper, and Joseph Canton, all of whom the plaintiff does specifically complain against in the current case. (Pl. Ex. 6; Pl. Ex. 14.) However, the charts themselves do not indicate with sufficient clarity that the direct or indirect supervision took place during the same time period that the arbitrator's make-whole relief applied. (Pl. Ex. 14.)

On April 13, 2006, Mr. Rosado and Unit Supervisor Peter Wilson met with the plaintiff to discuss the 8A Loan Unit's workload and target completions. (Def. 56.1 Stmt. ¶ 49.) The plaintiff blamed the backlog and delays on the resource needs of

the Unit and complained that Mr. Rosado and the Assistant
Commissioner were not addressing the resource needs. (Def. 56.1
Stmt. ¶ 50.) Mr. Rosado suggested the workload could be met "as
the Unit is constituted," and the plaintiff became agitated and
complained about a lack of career advancement. (Def. 56.1 Stmt.
¶ 51; Pl. 56.1 Stmt. ¶ 51.)

On May 8, 2006, another meeting was held between the
plaintiff, Assistant Commissioner Timothy Joseph, and Mr.
Rosado. (Def. 56.1 Stmt. ¶ 55.) The defendant claims that the
plaintiff was "antagonistic" and "interrupted [Mr. Rosado] with
snide and condescending comments." (Def. 56.1 Stmt. ¶ 56.) The
plaintiff objects to that characterization. (Pl. 56.1 Stmt. ¶
56.)

In spring of 2006, the Deputy Commissioner of the Office of
Housing Operations ("OHO"), Laurie LoPrimo, formed a working
group to review the procedures of the 8A Unit to determine what
changes were needed to increase efficiency and meet target
deadlines. (Def. 56.1 Stmt. ¶¶ 59-60.) Because of the
plaintiff's "disruptive behavior" at a meeting on July 20, 2006,
he was asked to leave. (Def. 56.1 Stmt. ¶¶ 61-63.) The
plaintiff admits to leaving but denies it was because he was
disruptive. (Pl. 56.1 Stmt. ¶¶ 61-63.) On July 25, 2006,
Deputy Commissioner LoPrimo wrote a Departmental Memorandum
concerning the plaintiff's "unprofessional and disruptive

behavior" at the July 20th meeting.  (Def. 56.1 Stmt. ¶ 64.)
The Deputy Commissioner noted that the plaintiff's behavior was
"unprofessional and inconsistent with your obligations as a
managerial employee . . . ."  Def. 56.1 Stmt. ¶ 65; Def. Ex. M.)
The plaintiff admits the memorandum was written but objects to
the characterization and description of the plaintiff's
behavior.  (Pl. 56.1 Stmt. ¶¶ 64-65.)

In 2006, Assistant Commissioner Joseph created a new
position: Chief of Staff of DACE, and on May 23, 2006, a job
vacancy notice was posted for the position.  (Def 56.1 Stmt. ¶
66.)  The defendant claims that there is no record of the
plaintiff's application in the file maintained by OHO.  (Def.
56.1 Stmt. ¶ 68.)  However, the plaintiff claims that he did in
fact apply for the position on June 27, 2006.  (Pl. 56.1 Stmt. ¶
67-68; Sims Decl. Feb. 24, 2010 ¶ 24.)

The defendant claims that after reviewing the personnel
needs of the agency, Deputy Commissioner LoPrimo and Assistant
Commissioner Joseph decided not to fill the vacancy.  (Def. 56.1
Stmt. ¶ 69.)  The plaintiff claims that these were not the
defendant's "true factual motives."  (Pl. 56.1 Stmt. ¶ 69.)

In October or November of 2006, Meryl Block Weissman,
Director of Operations for OHO, was temporarily made Chief of
Staff.  (Def. 56.1 Stmt. ¶ 70.)  Ms. Weissman was pregnant at
the time, and the position was less physically arduous than her

10

position as Director of Operations for the entire agency.  (Def. 56.1 Stmt. ¶ 70.)  Ms. Weissman went on maternity leave in March of 2007 and returned to her former position as Director of Operations in September of 2007.  (Def. 56.1 Stmt. ¶ 71.)

The plaintiff believes that Ms. Weissman did not meet the qualifications for the job and that he was not selected because of his race and age.  (Def. 56.1 Stmt. ¶¶ 76, 78; Pl. 56.1 Stmt. ¶ 73.)  The defendant denies this, stating that Ms. Weissman was "functioning in a position equivalent to Chief of Staff . . . and was involved in the administrative and managerial tasks related to the operations of four divisions with over 600 employees."  (Joseph Decl. Jan. 29, 2010 ¶ 58.)

On August 11, 2006, a job vacancy notice was posted for Director of Technical Services for Development Programs.  (Def. 56.1 Stmt. ¶ 79.)  The plaintiff applied but was not interviewed for the position.  (Def. 56.1 Stmt. ¶¶ 80-81.)  Joseph Longo, a white male, was appointed instead.  (Def. 56.1 Stmt. ¶ 84.)  The plaintiff alleges that this appointment occurred in February, 2007.  (Sims Dep. at 64.)  The plaintiff believes he did not receive the position because he is an African-American.  (Def. 56.1 Stmt. ¶ 86.)

On February 1, 2007, Mr. Rosado and Mr. Longo met with the plaintiff to discuss the contracts for the Franklin Plaza window replacement and window sills repair project.  (Def. 56.1 Stmt. ¶

92.)  The next day, Mr. Rosado wrote a memorandum to the plaintiff claiming that the plaintiff was "insolent," "condescending," "inappropriate," and "insulting" at the February 1st meeting.  (Def. 56.1 Stmt. ¶ 94.)  The plaintiff denies this characterization.  (Pl. 56.1 Stmt. ¶ 94.)  Mr. Rosado's memorandum further stated that the plaintiff's management "put the [agency] targets at risk" and that he "[has] no choice but to recommend and expedite your reassignment to [a] less critical function."  (Def. Ex. S; Def. 56.1 Stmt. ¶ 95.)

The defendant also alleges that the plaintiff "unilaterally decided to disregard a group decision" made on January 24, 2007 concerning the Franklin Plaza project.  (Def. Ex. S; see also Joseph Decl. March 19, 2010 ¶ 9.)

In his own letter dated February 9, 2007, the plaintiff denies the allegations in Mr. Rosado's memorandum as "grossly inaccurate and unfounded." (Def. 56.1 Stmt. ¶ 96.; Pl. 56.1 Stmt. ¶ 96.)  He further explains that when the January 24th meeting had ended, "there was no solution" to the contract problem with the Franklin Plaza project.  (Def. Ex. T at SDHR 141.)  The plaintiff added that, as the Technical Director for 14 years, he has "always met with other directors at [his] own discretion to address problems / issues."  (Def. Ex. T at SDHR 142.)

On February 26, 2007, Assistant Commissioner Joseph sent the plaintiff a memorandum reassigning him effective immediately. (Def. 56.1 Stmt. ¶ 99; Def. Ex. U.) The new position had no loss of pay or decrease in civil service status. The memorandum asserted as reasons for the reassignment the plaintiff's backlog of projects and inability to work within the chain of command. (Def. 56.1 Stmt. ¶ 100; Def. Ex. U.) The plaintiff denies those allegations. (Pl. 56.1 Stmt. ¶ 100-01.)

On October 10, 2004, the plaintiff filed a discrimination complaint with the United States Equal Employment Opportunity Commission ("EEOC"). (Def. 56.1 Stmt. ¶ 110.) The EEOC concluded there was no discrimination and issued the plaintiff a "Right to Sue" letter, which the plaintiff did not pursue. (Def. 56.1 Stmt. ¶¶ 112-13.)

On July 31, 2007, the plaintiff filed a discrimination complaint against HPD with the New York State Division of Human Rights ("NYSDHR"). (Def. 56.1 Stmt. ¶ 114; Def. Ex. Y.) The NYSDHR dismissed the complaint. (Def. 56.1 Stmt. ¶ 116.) On March 31, 2008, the EEOC adopted the findings of the NYSDHR and issued a "Right to Sue" letter. (Def. 56.1 Stmt. ¶ 120.) The current case was filed on July 1, 2008. (Def. 56.1 Stmt. ¶ 121.)

III.

The defendant argues that many of the plaintiff's claims are time barred.

A.

Under Title VII, before bringing a claim in federal court, a New York plaintiff must file a charge with the EEOC within 300 days of the alleged discriminatory act.  See 42 U.S.C. § 2000e-5(e); Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999); Coffey v. Cushman & Wakefield, Inc., No. 01 Civ. 9447, 2002 WL 1610913, at *2 (S.D.N.Y. July 22, 2002); Nweke v. Prudential Ins. Co. of Am., 25 F. Supp. 2d 203, 216 (S.D.N.Y. 1998).  This statutory requirement effectively acts as a statute of limitations, and Title VII claims are barred by the failure to file a timely charge.  See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996).  The filing of a complaint of discrimination with the NYSDHR is considered to be cross-filed with the EEOC.  Therefore, the date of filing with the NYSDHR is the date for filing with the EEOC for purposes of the statute of limitations.  See Govia v. Century 21, Inc., 140 F. Supp. 2d 323, 325, n.1 (S.D.N.Y. 2001).

The statute of limitations begins to run when each discrete discriminatory act occurs.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002); Coffey, 2002 WL 1610913, at *2 (noting that discrete acts falling outside of the statutory

14

period cannot form a basis for relief even if they are related
to other actionable conduct that is otherwise not time barred).
Failure to promote, demotion, and termination are all "discrete"
incidents of discrimination.  See Morgan, 536 U.S. at 114.
Conversely, because hostile work environment claims involve the
combination of multiple incidents and the continuing effect on
the conditions of employment, a claim is timely if any act
contributing to a pattern of harassment occurred within 300 days
of the filing of the EEOC charge.  See Morgan, 536 U.S. at 115;
Coffey, 2002 WL 1610913 at *2.

     The plaintiff filed his complaint with the NYSDHR on July
31, 2007.  Therefore, any discrete acts that occurred before
September 5, 2006, are time barred for purposes of the
plaintiff's discrimination claims under Title VII.  However,
under Morgan, acts before September 5, 2006 are properly
considered, to the extent they contribute to a "pattern of
harassment," for purposes of the plaintiff's hostile work
environment claim.  Thus, other than the hostile work
environment claim, the only timely Title VII claims for discrete
acts of discrimination are: (1) the plaintiff's non-promotion to
Chief of Staff in October or November of 2006; (2) the
plaintiff's non-promotion to the Director of Technical Services
for Development Programs in 2007; and (3) the plaintiff's
reassignment in February 26, 2007.

                              15

Any allegations with respect to events that occurred before September 5, 2006, are timely solely for the purpose of the plaintiff's hostile work environment claim.

### B.

Discrimination claims under the NYCHRL and § 1981 are subject to a three-year statute of limitations for filing a complaint.[2]  See N.Y.C. ADMIN. CODE § 8-502(d); Tadros v. Coleman, 898 F.2d 10, 12 (2d Cir. 1990) (per curiam).  The complaint was filed July 1, 2008, and thus, to be timely, the plaintiff's claims must have arisen for statute of limitations purposes after July 1, 2005.  There are no claims of discrete acts of discrimination that occurred in the period between July 1, 2005 and September 5, 2006.  Therefore, the only timely claims for discrete acts of discrimination under NYCHRL and § 1981 are the same three claims as those under Title VII.

---

[2] A different rule applies to new causes of action created by Congress after 1990.  Those causes of action are subject to 28 U.S.C. § 1658, a "catchall" four-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990.  See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-83 (2004).  Amendments to statutes originally passed before 1990 can be subject to § 1658 if the plaintiff's claim was made possible by the post-1990 amendment.  Jones, 541 U.S. at 382.  While § 1981 was amended in 1991 and some claims under the statute might be subject to the four-year rule, neither party has advanced this argument and the plaintiff has not contended that any § 1981 claim was made possible by the 1991 amendment.  See Bishop v. Modell & Co., 08 Civ. 7541, 2009 WL 3762119, at *10-11 (S.D.N.Y. Nov. 10, 2009).

IV.

The defendant argues that several of the plaintiff's claims should be dismissed for failure to exhaust administrative remedies.

A.

A plaintiff filing a Title VII claim in federal court must exhaust administrative remedies by filing a timely complaint with the EEOC.  Deravin v. Kerik, 335 F.3d 195, 200-03 (2d Cir. 2003).  Claims not asserted before the EEOC are not properly raised in federal court unless "they are reasonably related to those that were filed with the [EEOC]."  Deravin, 335 F.3d at 200 (internal quotation marks and citation omitted).  A claim is reasonably related if the facts described in the EEOC complaint give notice of the claim to the EEOC.  Id. at 200-01; see also Kim v. Columbia Univ., No. 06 Civ. 5365, 2010 WL 2629575, at *5 (S.D.N.Y. July 1, 2010).  A court must take into account the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Gomes v. Avco Corp., 964 F.2d 1330, 1334 (2d Cir. 1992) (quoting Silver v. Mohasco Corp., 602 F.2d 1083, 1090 (2d Cir. 1979), rev'd on other grounds, 447 U.S. 807 (1980)).[3]

---

[3] The Court of Appeals has also recognized two other types of claims that are reasonably related to claims asserted in an EEOC complaint: "(1) a claim alleging retaliation by an employer against an employee for filing an EEOC charge, and (2) a claim where the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC

There is no exhaustion requirement under § 1981.  <u>Johnson v. Railway Exp. Agency, Inc.</u>, 421 U.S. 454, 466 (1975); <u>Brown v. Castleton State College</u>, 663 F. Supp. 2d 392, 399 (D. Vt. 2009).

There is also no exhaustion requirement under the NYCHRL.  See N.Y.C. ADMIN. CODE § 8-502(a); <u>see also</u> <u>Hernandez v. N.Y. City Law Dep't of Corp. Counsel</u>, No. 94 Civ. 9042, 1997 WL 27047, at *10 (S.D.N.Y. Jan. 23, 1997).

The defendant concedes that the plaintiff properly raised the discrete acts of race discrimination in the NYSDHR complaint, which is the operational complaint because it was cross-filed with the EEOC.  However, the defendant argues that gender discrimination was not properly raised.  In the NYSDHR complaint, the plaintiff alleged that Meryl Block Weissman, a woman, was promoted over him and that this decision "discriminated against me."  (Def. Ex. Y at SDHR 9.)  These facts satisfy the "reasonably related" standard and are sufficient to give rise to a reasonable expectation that gender discrimination would be investigated by the EEOC.  <u>See</u> <u>Gomes</u>, 964 F.2d at 1334.

The defendant argues that the plaintiff failed to raise a hostile work environment claim in the NYSDHR complaint, and thus this claim should be dismissed for failure to exhaust.  The

---

charge."  <u>Deravin</u>, 335 F.3d at 201, n.3 (internal quotation marks and citation omitted).

plaintiff details several acts of discrimination in the NYSDHR complaint, but fails to allege that these acts produced a hostile work environment.  See Morales v. Long Island R.R., No. 09 Civ. 8714, 2010 WL 1948606, at *4-5 (S.D.N.Y. May 14, 2010). The administrative agency could not reasonably have been expected to investigate a claim of hostile work environment when no such claim was made or implied.  Therefore, the current claim of hostile work environment under Title VII was not properly raised at the administrative level and is dismissed.  However, because the plaintiff is also suing under § 1981 and NYCHRL, which do not require exhaustion, the merits of the hostile work environment claim are discussed below.

V.

The defendant challenges the merits of the plaintiff's discrimination claims.

A.

Discrimination claims under Title VII, § 1981, and NYCHRL are evaluated at the summary judgment stage by the same burden-shifting analysis that governs Title VII, established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See Dawson v. Bumble & Bumble, 398 F.3d 211, 217 (2d Cir. 2005) (noting that the burden-shifting Title VII analysis also applies to discrimination claims under the NYCHRL); McLee v. Chrysler

Corp., 109 F.3d 130, 134-35 (2d Cir. 1997) (applying the burden-shifting Title VII analysis to § 1981 claim).

To establish a prima facie case of discrimination under Title VII, a plaintiff must demonstrate: (1) that the plaintiff is a member of a protected class; (2) that the plaintiff's performance was satisfactory; (3) that the plaintiff suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  See McDonnell Douglas, 411 U.S. at 802; see also James v. N.Y. Racing Ass'n, 233 F.3d 149, 153-54 (2d Cir. 2000); Deluca v. Bank of Tokyo-Mitsubishi UFJ, No. 06 Civ. 5474, 2008 WL 857492, at *5 (S.D.N.Y. Mar. 31, 2008).  If the plaintiff meets the minimal burden of establishing a prima facie case, the burden of production then shifts to the defendant to offer a legitimate, nondiscriminatory rationale for the adverse employment action.  See McDonnell Douglas, 411 U.S. at 802-03; James, 233 F.3d at 154; see also Deluca, 2008 WL 857492, at *5.

If the defendant articulates a legitimate reason for the action, the presumption of discrimination raised by the prima facie case drops out, and the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision and that the plaintiff's membership in a protected class was.  See Texas Dep't Cmty. Affairs v.

Burdine, 450 U.S. 248, 254-56 (1981); Deluca, 2008 WL 857492, at
*5.

The Court of Appeals for the Second Circuit has instructed
that in determining whether the plaintiff has met this burden, a
court is to use a "case by case" approach that evaluates "the
strength of the plaintiff's prima facie case, the probative
value of the proof that the employer's explanation is false, and
any other evidence that supports or undermines the employer's
case."  James, 233 F.3d at 156 (quoting Reeves v. Sanderson
Plumbing Co., 530 U.S. 133, 148-49 (2000)); see also Deluca,
2008 WL 857492, at *5.  Although summary judgment must be
granted with caution in employment discrimination actions "where
intent is genuinely at issue, summary judgment remains available
to reject discrimination claims in cases lacking genuine issues
of material fact."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d
29, 40 (2d Cir. 1994) (internal citation omitted); see also
Deluca, 2008 WL 857492, at *5.

                                B.

The defendant concedes that the plaintiff has made out a
prima facie case of race discrimination.  The plaintiff, an
African-American, is a member of a protected class.  The
plaintiff has met the "minimal" showing necessary to establish
job-qualification given that he has worked for HPD since 1980,
has two master's degrees relevant to the positions in question,

                                21

and received many letters of commendation during his tenure.
See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d
Cir. 2001) ("[A]ll that is required is that the plaintiff
establish basic eligibility for the position at issue, and not
the greater showing that he satisfies the employer.") (internal
quotation marks and citation omitted).  The plaintiff clearly
suffered adverse employment action--a demotion and two non-
promotions--which occurred under circumstances giving rise to an
inference of discrimination.  See Robins v. N.Y.C. Bd. of Educ.,
No. 07 Civ. 3599, 2010 WL 2507047, at *8 (S.D.N.Y. June 21,
2010) ("Circumstances contributing to a permissible inference of
discriminatory intent may include replacing an employee with an
employee not in the protected class . . . .").  The plaintiff's
prima facie case is especially strong given that each of the
three positions at issue, the Chief of Staff position, the
Director of Technical Services for Development Programs, and the
plaintiff's continuing service as Director of the Article 8A
Loan Program were given to caucasians who were similarly or less
qualified than the plaintiff.  This is the classic prima facie
case of race discrimination that was first articulated by the
Supreme Court in McDonnell Douglas.[4]  411 U.S. at 802.

---

[4] The plaintiff has only established a prima facie case of gender discrimination with respect to his claim of non-promotion to Chief of Staff where the position was filled, at least temporarily, by a caucasian woman.  The plaintiff does not appear to argue otherwise.

While conceding that the plaintiff has established a prima
facie case of race discrimination, the defendant argues that it
has shown a non-pretextual reason for its actions.  The
defendant attributes the failure to promote and the plaintiff's
reassignment to his inability "to properly delegate work" which
led to "unnecessary delays in the Unit" (Def. 56.1 Stmt. ¶ 48.)
The plaintiff counters by saying that the delays were
attributable to understaffing.  The plaintiff supports this
argument by pointing to a recent arbitration award which
demonstrates out of title work was being performed at HPD.  (Pl.
Ex. 6.)  From this evidence, a reasonable inference in the
plaintiff's favor would be that there was a shortage of
resources at HPD that necessitated the out of title work, and
that this shortage of resources actually caused the delays.

The defendant further alleges that the plaintiff was
insubordinate by meeting with program and consultant engineers
and making a "unilateral[]" decision.  (Def. Ex. S.)  The
plaintiff denies the defendant's characterization that his
behavior was insubordinate and asserts that meeting with other
directors to address problems and issues was within his
discretion.  (Def. Ex. T at SDHR 142.)  The defendant also
contends that the plaintiff was insolent and disruptive in his
meetings with others, but the plaintiff denies these
categorizations.  (Def. Ex. S; Pl. 56.1 Stmt. ¶ 94.)

The evidence plainly puts at issue whether the defendant's reason was or was not pretextual.  Moreover, the plaintiff's prima facie case of discrimination is strong given the circumstances of his demotion and non-promotions.  Accordingly, summary judgment for the defendant is inappropriate.  The motion is therefore denied as to these claims under Title VII.[5]

C.

Pursuant to the Local Civil Rights Restoration Act of 2005 ("Restoration Act"), N.Y.C. Local Law No. 85 (2005), the Court must evaluate claims brought under the New York City Human Rights Law separately from counterpart claims brought under Title VII.  See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009).  The Restoration Act "abolish[ed] 'parallelism' between the [NYCHRL] and federal and state antidiscrimination law."  Id.  "Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of [the NYCHRL], viewing similarly worded provisions of federal and state civil rights laws as a floor below which the [NYCHRL] cannot fall . . . ."  Restoration Act § 1.  The "'uniquely broad and remedial purposes'" of the NYCHRL compel this independent liberal construction analysis.  Williams v. New York City Hous. Auth., 872 N.Y.S.2d 27, 31 (1st Dep't

---

[5] The only incident of alleged gender discrimination is the failure to promote the plaintiff to the position of Chief of Staff, and only that claim of alleged gender discrimination can proceed.

App. Div. 2009) (citing N.Y.C. ADMIN. CODE § 8-130); see also

Loeffler, 582 F.3d at 278.

Despite this broad construction requirement for NYCHRL,

"[n]one of the 2005 Restoration Act's amendments to the NYCHRL

altered the standard by which a court should determine whether a

discriminatory act has occurred . . . ." Wilson v. N.Y.P.

Holdings, Inc., No. 05 Civ. 10355, 2009 WL 873206, at *29

(S.D.N.Y. Mar. 31, 2009); see also Vinokur v. Sovereign Bank,

No. 07 Civ. 2893, 2010 WL 1223320, at *8 (E.D.N.Y. March 22,

2010).  For the reasons discussed above, there are genuine

issues of fact that prelude granting the defendant's motion.

Accordingly, the defendant's motion for summary judgment is

denied as to the plaintiff's discrete claims of discrimination

under the NYCHRL.

D.

While the burden-shifting framework is the same for both §

1981 and Title VII claims, to impose § 1981 liability upon a

municipality, a plaintiff must identify a municipal "policy" or

"custom" that caused the plaintiff's injuries.  See Monell v.

Dept. of Soc. Servs., 436 U.S. 658, 694 (1978); see also Bd. of

County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Jett v.

Dallas Indep. Sch. Dist., 491 U.S. 701, 735-36 (1989); Sorlucco

v. N.Y. City Police Dep't, 971 F.2d 864, 870 (2d Cir.1992);

Bullard v. City of New York, 240 F. Supp. 2d 292, 299-300

(S.D.N.Y. 2003).  The plaintiff must demonstrate that the municipality was the "moving force" behind the injuries alleged. Brown, 520 U.S. at 404; Monell, 436 U.S. at 692.  The alleged policy does not need to be contained in an explicitly adopted rule so long as the unlawful practices of city officials are so "persistent and widespread . . . as to constitute a custom or usage with the force of law."  Sorlucco, 971 F.2d at 870-71 (internal quotation marks omitted).

The plaintiff's evidence is limited to allegations that he has been discriminated against, either through non-promotion or reassignment.  The plaintiff has relied on conclusory allegations that these acts were taken pursuant to a custom or policy, but he has provided no evidence of such a custom or policy, and no evidence that any such alleged custom or policy caused the alleged acts of discrimination.  By contrast, the defendant has come forward with specific instances of African-Americans who were promoted at HPD to positions such as Deputy Commissioner, Assistant Commissioner, and Director of Operations among others.  (Joseph Decl. March 19, 2010 ¶¶ 13-14.) Therefore, the plaintiff has failed to raise a triable issue of fact and the claims under § 1981 are dismissed.

VI.

The defendant challenges the merits of the defendant's
hostile work environment claims.

A.

The plaintiff's claim for hostile work environment under
Title VII is dismissed for a failure to exhaust, but in any
event the claim itself would not satisfy the relevant standard.
To establish a prima facie case of hostile work environment
under Title VII, a plaintiff must show: (1) discriminatory
harassment that was "sufficiently severe or pervasive to alter
the conditions of the victim's employment and create an abusive
working environment," and (2) a specific basis exists for
imputing the objectionable conduct to the employer.  Perry v.
Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997).  The
plaintiff must show not only that the plaintiff subjectively
perceived the environment to be abusive but also that the
environment was objectively hostile and abusive.  See Demoret v.
Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006); Feingold v. New
York, 366 F.3d 138, 150 (2d Cir. 2004).

The first element of the prima facie case must be
established by a showing that "the workplace was so severely
permeated with discriminatory intimidation, ridicule, and insult
that the terms and conditions of [the plaintiff's] employment
were thereby altered."  Alfano v. Costello, 294 F.3d 365, 373

27

(2d Cir. 2002).  Isolated incidents typically will not create a
hostile work environment, unless the incidents are so severe
that they alter the terms and conditions of employment.
Demoret, 451 F.3d at 149; Patterson v. Cnty. of Oneida, 375 F.3d
206, 227 (2d Cir.2004).  "Generally, 'incidents must be more
than episodic; they must be sufficiently continuous and
concerted in order to be deemed pervasive.'"  Demoret, 451 F.3d
at 149 (quoting Alfano, 294 F.3d at 374).

      In analyzing a hostile work environment claim, courts
consider the totality of the circumstances, taking into account
"a variety of factors including 'the frequency of the
discriminatory conduct; its severity; whether it is physically
threatening or humiliating, or a mere offensive utterance; and
whether it unreasonably interferes with an employee's work
performance.'"  Demoret, 451 F.3d at 149 (quoting Harris v.
Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  Finally, although
the Court of Appeals for the Second Circuit has cautioned that
hostile work environment claims are "especially well-suited for
jury determination," Schiano v. Quality Payroll Sys., Inc., 445
F.3d 597, 605 (2d Cir. 2006) (internal citation omitted), "[i]t
is axiomatic that mistreatment at work . . . is actionable under
Title VII only when it occurs because of an employee's . . .
protected characteristic," Brown v. Henderson, 257 F.3d 246, 252
(2d Cir. 2001).

The plaintiff has failed to adduce any evidence from which a rational trier of fact could conclude that he was subjected to a hostile work environment.  The plaintiff does not point to any conduct that could reasonably be construed as severe or pervasive.  The plaintiff does not present any evidence of conduct that was offensive, humiliating, or physically intimidating.  Therefore, even if exhausted, the plaintiff's claim under Title VII for a hostile work environment must be dismissed on the merits.

B.

The NYCHRL is intended to be more protective than state and federal law.  Farrugia v. N. Shore Univ. Hosp., 820 N.Y.S.2d 718, 724 (Sup. Ct. 2006).  The "severity" and "pervasiveness" of the alleged harassment "are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability."  Williams, 872 N.Y.S.2d at 38 (citing Farrugia, 820 N.Y.S.2d at 725); see also Fleming v. MaxMara USA, Inc., No. 06 Civ. 6357, 2010 WL 1629705, at *10 (E.D.N.Y. April 21, 2010).  "Thus, less egregious conduct than that required under Title VII may support a hostile work environment claim under the NYCHRL."  Panzarino v. Deloitte & Touche LLP, No. 05 Civ. 8502, 2009 WL 3539685, at *9 (S.D.N.Y. Oct. 29, 2009); see also Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 724 n.10 (2d Cir. 2010).

However, the "broader purposes of the NYCHRL do not connote
an intention that the law operate as a general civility code."
Zhao v. Time, No. 08 Civ. 8872, 2010 WL 3377498, at *23
(S.D.N.Y. Aug. 24, 2010) (internal citation and quotation marks
omitted).  Summary judgment is available where the employer can
prove that the alleged conduct does not even represent a
"borderline" violation, but "could only be reasonably
interpreted by a trier of fact as representing no more than
petty slights or trivial inconveniences."  Williams, 872
N.Y.S.2d at 41; see also Kaur v. N.Y.C. Health and Hosp. Corp.,
688 F. Supp. 2d 317, 339-40 (S.D.N.Y. 2010).

In this case, the exact conduct or incidents that the
plaintiff claims produced the alleged hostile work environment
are unclear.  In his complaint the plaintiff asserts
conclusorily that the defendant violated the NYCHRL because it
engaged in "outrageous and malicious conduct."  (Compl. ¶ 44.)
The plaintiff specifically complains about alleged retaliatory
conduct and the use of documents created in response to EEOC
charges.  (Compl. ¶ 46.)  However, the plaintiff has withdrawn
any claim of retaliation.  At oral argument, when the Court
asked for a specific instance of hostile work environment, the
plaintiff referred to an incident in 2007 where Mr. Popper, the
HPD Director of Operations, allegedly showed various employees
documentation regarding a medical condition that the plaintiff

30

had at the time when the plaintiff was on medical leave.  (Pl. Ex. 4 ¶ 27.)  However, the plaintiff does not allege that Mr. Popper acted with racial animus when disclosing the document, nor does the plaintiff claim that he was ever subjected to any race-based comments or ridicule, no matter how slight.  The only other facts that could reasonably support the plaintiff's hostile work environment claim are the non-promotions and reassignment.[6]

Even under NYCHRL's more liberal standard, the plaintiff has failed to establish a genuine issue of material fact as to the existence of a hostile work environment.  Although the NYCHRL requires "less egregious" conduct than Title VII, the plaintiff cannot identify any conduct that could reasonably be construed as "egregious," "hostile," or "abusive."  See Zhao, 2010 WL 3377498, at *23 (granting defendant's summary judgment motion on the plaintiff's hostile work environment claim because the plaintiff could not show that she was subjected to egregious, hostile, or abusive conduct); Panzarino, 2009 WL 3539685, at *10.  The plaintiff's conclusory assertion of hostility and unequal treatment, and the alleged incident regarding the medical document, taken together, fall well-short of even a "borderline" violation.  While the plaintiff's claim

---

[6] The plaintiff's claim of harassment appears to be directed at actions allegedly based on race rather than gender. (See Compl. ¶ 39.)  If the alleged hostile work environment were allegedly based on gender, there are no factual allegations to support such a claim.

of unequal treatment with respect to the non-promotions and reassignment is relevant to his claims of race and/or gender discrimination under Title VII and NYCHRL, the plaintiff proffers no additional facts from which a reasonable juror could find the existence of a hostile work environment.  The plaintiff will have the opportunity at trial to demonstrate that the incidents of non-promotion and reassignment were based on race and therefore actionable under both Title VII and the NYCHRL. But, standing alone they do not support a claim of hostile work environment.

The plaintiff has failed to proffer sufficient facts from which a reasonable jury could find he was subjected to a racially hostile work environment even under the more permissive NYCHRL standard.  Therefore, the defendant's motion for summary judgment as to the plaintiff's hostile work environment claim under NYCHRL is granted.


VII. Conclusion.

The Court has considered all of the arguments of the parties.  To the extent they are not specifically addressed above, they are either moot or without merit.  For all of the foregoing reasons, the defendant's motion for summary judgment as to all claims under § 1981 **is granted**.  The defendant's

claims under Title VII and NYCHRL **is granted**. The defendant's
motion for summary judgment as to discrete acts of
discrimination under Title VII and NYCHRL **is denied** as to (1)
the plaintiff's non-promotion to Chief of Staff in October or
November of 2006; (2) the plaintiff's non-promotion to the
Director of Technical Services for Development Programs in 2007;
and (3) the plaintiff's demotion in February 26, 2007. The
defendant's motion for summary judgment under Title VII and
NYCHRL **is granted** as to all other discrete acts of
discrimination.

The clerk is directed to close Docket No. 16.

**SO ORDERED.**

**Dated:    New York, New York**
**          September 29, 2010**

                                        John G. Koeltl
                                  United States District Judge

33